UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JMG IMPROVEMENTS, INC.                           :

                                                                                :

            Plaintiff,        :        ORDER

                                                                                   :

       -v.-

                                                                              :        20 Civ. 2882 (RA) (GWG)

ARCH SPECIALTY INSURANCE
COMPANY, et al.                                     :

           Defendants.     :
-------------------------------------------------------------x

GABRIEL W. GORENSTEIN, United States Magistrate Judge

      Each party in this case has made a motion for summary judgment, which includes materials that appear in redacted form. See Docket ## 83-5, 97-99. In connection with its cross-motion, plaintiff JMG Improvements, Inc. ("JMG") has asked this Court for permission to file publicly on the docket, and without redactions, two documents provided by defendant Arch Specialty Insurance Company ("Arch") that were marked confidential during discovery and that were included in JMG's summary judgment motion papers in redacted form, and to disallow redactions in a document that Arch has already filed on the docket. See Letter from James Haddad, filed July 7, 2021 (Docket # 92) ("First Haddad Let."); Letter from James Haddad, filed July 8, 2021 (Docket # 93) ("Second Haddad Let.").[1] Arch has opposed the application and has cross-moved to maintain the redactions on the identified documents. See Letter Motion to Seal, filed July 14, 2021 (Docket # 104) ("Def. Opp."). While Arch acknowledges that "there is a presumption in favor of public access to summary judgment filings as set forth in Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006)," Def. Opp. at 2, it argues it has overcome that presumption.

      Specifically, plaintiff has asked that two separate documents be filed publicly without redaction: 1) a "certificate of insurance that was provided to Arch by my client, JMG," First Haddad Let. at 1, and 2) "Arch's heavily redacted claims manual,"[2] id. A third document, Arch's "Claim Notes (Doc[ ]#[ ]83-5)," has already been filed publicly with redactions and JMG seeks to disallow "all redactions of entries prior in date to 3/13/2019." Second Haddad Let. at 2.

---

    [1] In accordance with the Court's directives, plaintiff has filed "on the docket . . . a redacted version of its cross-motion — that is, a version that redacts the material designated as confidential and any references to it." Order, filed July 7, 2021 (Docket # 91).

    [2] JMG refers to this document as the "claims manual," First Haddad Let. at 1, and Arch calls it the "claim manual," Def. Opp. at 1. For consistency, we refer to it as the "claim manual."

Arch "does not oppose Plaintiffs [sic] request to file a certificate of insurance contained in Arch's underwriting file without seal." Def. Opp. at 3 n.1. However, Arch does oppose JMG's other two requests. See generally id. at 2-4. Because Arch does not seek sealing of the certificate of insurance, the Court will grant this aspect of JMG's application.

We begin by noting that there are two distinct types of redactions at issue in the parties' applications. One category consists of the redactions that implicate Lugosch: that is, redactions of content that the parties intend to present to the Court in sealed, unredacted form (which we will call the "Lugosch redactions"). The second category are redactions made by Arch during the discovery process. This category consists of redacted content that JMG has never seen, and whose contents neither party has presented to the Court in the summary judgment motions (which we will call the "non-Lugosch redactions").

The Lugosch redactions exclusively relate to the claim manual and will be discussed shortly. The non-Lugosch redactions consist of all of the redactions in the "Claim Notes" and certain redactions in the claim manual. As just noted, plaintiff has never seen the content of the non-Lugosch redactions and thus no party has presented their contents to the Court in their summary judgment motions. Nonetheless, JMG is seeking what amounts to production of an unredacted version of these materials to the extent they appear in the summary judgment papers. See Second Haddad Let. at 1-2. Arch resists the production on privilege and other grounds. See Def. Opp. at 3-4. There is no need to reach these grounds, however, because discovery ended on March 18, 2021, see Order, filed February 17, 2021 (Docket # 55) (granting limited extension of discovery), and JMG has had possession of these documents since at least April 23, 2021, when the last batch of documents was ordered produced. See Minute Entry, dated March 24, 2021. Yet, rather than move to compel production of the redacted material, JMG instead waited nearly three months after the close of discovery, and while summary judgment briefing was underway, before raising any objections. We thus deny the application as untimely. See Owen v. No Parking Today, Inc., 280 F.R.D. 106, 112 (S.D.N.Y. 2011) ("A party ordinarily must file a motion to compel before the close of discovery and if it fails to do so, the motion will be deemed untimely."); Lane v. Lucent Technologies, Inc., 2007 WL 2079879, at *3 (M.D.N.C. 2007) ("Generally, a party must file a motion to compel before the close of discovery in order for that motion to be deemed timely.").

With respect to the Lugosch redactions, which consist entirely of portions of the claim manual (filed as Docket # 97-3) and references to it in JMG's summary judgment papers,

> The framework for determining whether a motion to seal a judicial document should be granted is set forth in Lugosch. Before the common law right of access attaches to any document, the Court must first determine whether such document is a "judicial document." [435 F.3d at 119.] At step two of this analysis, the court must determine the weight of the presumption . . . which "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview

2

solely to insure their irrelevance." Id. (quoting [United States v. Amodeo, 71 F.3d 1048, 1049 (2d Cir. 1995)]). At the third and final step of the analysis, a court must then balance the weight of that presumption against "competing considerations," including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Id. at 120.

Parneros v. Barnes & Noble, Inc., 2019 WL 10966199, at *1 (S.D.N.Y. Aug. 16, 2019). Arch's motion does not contest that the documents at issue are judicial documents, nor does Arch address the weight of the presumption. Instead, Arch argues that "good cause exists to seal the claim manual because it contains highly confidential proprietary trade secrets." Def. Opp. at 2.

Applying the Lugosch framework, we first find that the claim manual is a judicial document and that the "more stringent First Amendment framework applies" to the presumption of access. Lugosch, 435 F.3d at 124. We arrive at this conclusion because "there exists a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion." Id. Here, the claim manual was submitted in connection with JMG's summary judgment motion, see Docket # 97-3. Thus, we must consider whether Arch has justified its sealing. To grant Arch's request, the Court must make "specific, on-the-record findings that sealing is necessary to preserve higher values" and the sealing order must be "narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124.

In support of its motion to seal the claim manual, Arch has provided a sworn declaration from Christine Schneider, "Vice-President of Casualty Claims." Declaration of Christine Schneider, filed July 14, 2021 (Docket # 105) ("Schneider Decl."), ¶ 1.[3] Schneider states that "Arch drafted the claim manual as an internal guideline to assist its personnel in handling insureds' claims," that it "has incurred substantial expense in the creation and maintenance of its claim manual, treats it as confidential and proprietary, and does not willingly or voluntarily provide public access to the manual to companies or individuals not affiliated with or employed by Arch," and that public disclosure could result in "competitor insurance companies . . . seek[ing] to duplicate or reconstruct Arch's proprietary claims-handling guidelines and procedures." Id. ¶¶ 6-7. Schneider further states that such disclosure would result in "Arch's competitive position in the insurance marketplace" being "severely damaged." Id. ¶ 8.

As one case has noted, "[c]ourts in this Circuit have determined that the presumption of access may be outweighed when there are considerations of the need to conceal confidential business information that could harm a defendant's competitive position or reveal a trade secret." Ramirez v. Temin & Co., Inc., 2020 WL 6781222, at *3 (S.D.N.Y. Nov. 18, 2020). Of course, "the fact that business documents are secret or that their disclosure might result in adverse

---

[3] JMG argues that Schneider's affidavit is deficient because it is "not sworn, acknowledged or even notarized," Letter from James Haddad, filed July 16, 2021 (Docket # 107) ("Third Haddad Let."), at 1. In fact, Schneider's declaration complies fully with the requirements of 28 U.S.C. § 1746 for a sworn document inasmuch as it states: "I declare under penalty of perjury that the foregoing is true and correct." Schneider Decl. ¶ 11.

publicity does not automatically warrant" nondisclosure; rather, the "party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009).  "[T]rade secret law is instructive in gauging whether information constitutes sensitive business information that courts should shield from public scrutiny." Id.  Thus, courts

> have routinely applied the six factors set forth in the Restatement (First) of Torts § 757, comment b, when determining the existence of a trade secret:
>
>> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Id. at 245 (citing cases); accord Ramirez, 2020 WL 6781222, at *4.

While the declaration submitted in support of Arch's motion is not expansive, the Court, after reviewing the excerpts of the claim manual in conjunction with the affidavit, concludes that the excerpts should not be publicly filed. Schneider affirms that the claim manual is not known outside of Arch, that it is not known by others in the insurance industry, that Arch makes great efforts to guard the secrecy of the information, and that it "has incurred substantial expense" in creating and maintaining it. Schneider Decl. ¶ 7. The affidavit further attests to the harm that Arch could suffer if the manual is disclosed. Id. ¶ 8; see Cohen v. Metro. Life Ins. Co., 2003 WL 1563349, at *1 (S.D.N.Y. Mar. 26, 2003) (finding employer affidavit "attesting specifically to the business purposes and internal confidential treatment of both documents" and representing "that MetLife would suffer injury if the documentation were disclosed publicly, because competitors could gain advantage from the business method efficiencies" satisfied good cause standard for issuing protective order).

Plaintiff had the opportunity to rebut Schneider's factual assertions but offered no evidence of its own. Its arguments that the affidavit is deficient are also unconvincing. The fact that Arch's manual may be inspected by state regulators, Third Haddad Let. at 1-2, does not undermine Arch's privacy interest in keeping its manual from its competitors as there is no evidence (let alone argument) that such inspections result in the disclosure of claim manuals to competitors. Also, we do not understand the relevance of a proposed model law to make "claim files . . . open to inspection," id. at 2, inasmuch as the law has not been enacted and it is not even clear that it would apply to a claim manual.

Weighing the competing interests and viewing the material in the context it has been presented to the Court, we conclude that the value in public access is outweighed by the defendant's interests in protecting itself from a competitor's obtaining unfettered access to its processes regarding claim handling. We note that numerous cases have come to the same conclusion with respect to insurance claim manuals. See, e.g., Chavez v. Standard Ins. Co., 2020 WL 6382611, at *2 (N.D. Tex. Oct. 30, 2020); Novello v. Progressive Express Ins. Co., 2020 WL 9071426, at *1 (M.D. Fla. Dec. 28, 2020); Coronel v. GEICO Ins. Agency Inc., 2015 WL 5607643, at *11 (D. Ariz. Sept. 24, 2015). For its part, JMG does not cite to a single case denying sealing of an insurance claim manual. Instead it cites to a case for the irrelevant proposition that an insurer's claim manual is "commonly . . . discoverable." Third Haddad Let. at 2 (citing Mariner's Cove Site B Associates v. Travelers Indem. Co., 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005)). Finally, while "redacting sensitive information is a preferable alternative to sealing an entire document," Hanks v. Voya Ret. Ins. & Annuity Co., 2021 WL 2451981, at *1 (S.D.N.Y. June 16, 2021), it would not be feasible here to seal anything other than the entirety of the excerpts at issue — which in fact consist of only several paragraphs.

Accordingly,

(1) JMG shall refile by July 30, 2021, on the public docket any motion papers that contained or referred to the redacted certificate of insurance without the redactions related to the certificate of insurance;

(2) JMG shall file under seal and in unredacted form by August 2, 2021, (a) the excerpt of the claims manual as produced to JMG (Docket # 97-3) and (b) an unredacted version of any of its summary judgment paper that refer to that excerpt; and

(3) In any future filing by Arch or JMG, the excerpted claim manual as produced to JMG (Docket # 97-3) or references in briefs or other papers to the excerpted claim manual shall be filed on the public docket in redacted form. An unredacted version of such papers shall simultaneously be filed under seal.

The Clerk is directed to terminate the motions docketed as # 92 and 104.

SO ORDERED.

Dated: New York, New York
July 26, 2021

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge