USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/3/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JMG IMPROVEMENTS INC. and
BE & YO REALTY INC,

                Plaintiffs,

v.

ARCH SPECIALTY INSURANCE
COMPANY and ARMOUR RISK
MANAGEMENT INC,

                Defendants.

No. 20-CV-2882 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

JMG Improvements Inc. filed this action against Arch Specialty Insurance Company and Armour Risk Management Company ("Defendants") seeking a declaratory judgment that Arch breached its insurance policy with JMG by denying coverage for a lawsuit filed by an injured employee of one of JMG's subcontractors. Be & Yo Realty, initially a defendant, was re-aligned as a plaintiff and now argues it is also entitled to coverage under the terms of the Policy. Currently before the Court are cross motions for summary judgment. For the reasons that follow, Plaintiffs' motions for summary judgment are denied, and Defendants' motion is granted.

**BACKGROUND**

**1.     Factual Background**

The following facts are drawn from the parties' Local Civil Rule 56.1 statements.[1]

**A.     Claimant's Injury and the Work Performed**

Samuel and Ester Schwartz owned a residential property and hired Be & Yo as a general contractor to oversee construction. Defs.' 56.1 Stmt. ¶¶ 1-3. Be & Yo hired Plaintiff JMG to

---

[1] Unless otherwise noted, citation to a 56.1 Statement incorporates by reference the documents cited therein.

perform "stucco work" at the property, including the installation of an "exterior insulation and finish system" ("EIFS"). *Id.* ¶ 4. JMG in turn subcontracted the EIFS work to another company, New York Stucco & General Construction LLC ("NY Stucco"). *Id.* ¶ 5. On April 14, 2016, Mr. Luis Alberto Hernandez Salazar, an employee of NY Stucco, was injured during the construction when he fell from scaffolding that had been erected on the property. *Id.* ¶¶ 6, 72; JMG 56.1 ¶ 98.

Although Plaintiffs dispute that Salazar's injury "relat[ed] to or result[ed] from" installation of EIFS, *see* JMG 56.1 ¶ 6, there is uncontroverted evidence that the purpose of the scaffolding was to install EIFS, and that NY Stucco was hired to "furnish and install EIFS." Defs.' 56.1 ¶¶ 4, 45–50; JMG 56.1 ¶ 104; *see also* Dkt. 83-12 (subcontract agreement).

### B.    The Underlying Action

More than a year after the accident, on July 17, 2017, Salazar sued JMG and a person he mistakenly believed was the homeowner, David Perlmutter. Defs.' 56.1 ¶ 7. The case against JMG and Perlmutter was dismissed with prejudice after Plaintiff determined that Perlmutter was not the property owner. *Id.* ¶ 8. Eleven months later, on June 26, 2018, Salazar filed an action against Be & Yo and Samuel and Esther Schwartz, alleging that he was injured due to their negligence, and that they violated several provisions of the New York Labor Law during the construction. *Id.* ¶ 9. In connection with that lawsuit, Be & Yo filed a third-party action against NY Stucco and JMG seeking indemnification. *Id.* ¶ 10. JMG, in turn, sought indemnification pursuant to its insurance policy with Defendant Arch ("the Policy"). Dkt. 83-1.

### C.    The Policy

Two sections of the Policy are of particular importance to JMG's indemnification claim. First, the Policy's "New York Limitation" concerned work done by subcontractors and included both conditions precedent to coverage and an exclusion. The New York Limitation modified the Policy to require that the insured "obtain agreements, in writing, from all 'subcontractors' for each

and every job that you employ a 'subcontractor', pursuant to which the 'subcontractor(s)' will be required to defend, indemnify and hold you harmless." Policy at 28;[2] *see also* Dkt. 83-2. It excluded coverage of any

> claim, "suit," demand or loss that alleges "bodily injury", including injury to any "worker" . . . that in any way . . . results from operations or work performed on your behalf by a "subcontractor", unless such "subcontractor":
>
> **1.** Has in force at the time of such injury or damage a Commercial General Liability insurance policy that:
>
>   **a.** names you and any other Named Insured as an additional insured;
>   **b.** provides an each-occurrence limit of liability equal to or greater than $1,000,000; and
>   **c.** provides coverage for you for such claim, "suit", demand or loss; and
>
> **2.** Has agreed in writing to defend, indemnify and hold harmless you and any other Named Insured . . . for any claim . . . arising out of the work performed by such subcontractor, to the fullest extent allowed by law.

*Id.* at 28.

The second relevant section of the Policy is the EIFS exclusion. Under this provision, there is no coverage for "any claim, 'suit', demand or loss that alleges 'bodily injury'… that in any way, in whole or in part, arises out of, relates to or results from: [t]he design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an [EIFS] or any part thereof . . . ." *Id.* at 14.

### D. JMG's Notice of Claim and Arch's Subsequent Investigation

The claims process began on July 28, 2017 when JMG submitted a notice to Arch regarding the Salazar accident. Defs.' 56.1 ¶ 19. Arch acknowledged receipt of the claim, and spoke to Salazar's counsel. *Id.* ¶¶ 20–21. Arch then spoke with Gitty Deutsch, one of JMG's employees, and requested several documents in connection with the claim, including JMG's "subcontract with

---

[2] Citations to the page numbers of the Policy refer to the page numbers of the PDF at Dkt. 83-1.

New York Stucco" and "copies of certificates of insurance from New York Stucco and any other subs who we hired to work at the site." *Id.* ¶¶ 22–23; *see also* Dkt. 83-7 (July 31, 2017 email). Arch did not receive the documents it requested. *Id.* ¶¶ 24–30.

Arch assigned a private investigator to the case on August 25, 2017, *id.* ¶ 30, and, on September 13, 2017, the investigator confirmed that JMG had subcontracted with NY Stucco, *id.* ¶ 37. The private investigator contacted Joel Wercberger, a JMG employee, regarding production of the documents Arch previously requested, and called multiple times over the course of a month attempting to review the contract between JMG and NY Stucco. *Id.* ¶¶ 37–43.

### E.     Arch's Disclaimer

Because it still had not received any of the requested documents, on October 23, 2017, Arch mailed a letter disclaiming coverage based on the New York Limitation. *Id.* ¶¶ 43–44; *see also* Dkt. 83-11. On November 2, 2017, JMG sent several of the documents that Arch requested, including a contract between JMG and NY Stucco dated March 25, 2016, a certificate of insurance that listed "Boccarossa Insurance LLC" as producer and "New York Stucco" as insured, and, critically, a purchase order between JMG and NY Stucco to "furnish and install EIFS," which would form the basis for Arch's disclaimer based on the EIFS exclusion. *Id.* ¶ 50.

On November 21, 2017, Arch contacted Nationwide, NY Stucco's insurer, requesting that it defend and indemnify JMG based on the contract between JMG and NY Stucco. *Id.* ¶ 51. Nationwide denied coverage because it did not have a valid contract between NY Stucco and JMG. *Id.* ¶ 52. A week later, on November 28, 2017, Arch sent another letter to JMG, advising that it would maintain its disclaimer under the New York Limitation until Nationwide confirmed that JMG qualified as an additional insured, and that it also disclaimed coverage pursuant to the EIFS exclusion. *Id.* ¶¶ 50 –52. Arch then sent a copy of the JMG-NY Stucco contract to Nationwide on January 19, 2018. *Id* ¶ 53. Shortly thereafter, in February of 2018, Nationwide disclaimed

4

coverage to JMG because NY Stucco had "informed Nationwide that the JMG-NY Stucco Contract was signed on September 11, 2017, more than a year after the alleged accident." *Id.* ¶ 54. The timeline regarding the execution of this contract, and whether it was forged or is otherwise invalid, is heavily contested. *See, e.g,* Defs.' Mem. at 12–13; Pls.' Opp. at 11–12.

Several months later, on August 20, 2018, Be & Yo's insurance broker filed a notice of claim with Arch seeking indemnification on behalf of Be & Yo and Mr. and Mrs. Schwartz. *Id.* ¶ 57. Arch disclaimed coverage to both on September 19, 2018, citing the New York Limitation and EIFS exclusion as its basis for doing so. *Id.* ¶ 59. After Be & Yo filed a third-party action against JMG in state court, Arch disclaimed coverage again in January of 2019. *Id.* ¶ 61.

Armour Risk Management Inc., the other defendant in this action, was only involved as a third-party claims administrator. Defs.' 56.1 ¶ 17. It processed the claims from JMG and Be & Yo on Arch's behalf. Defs.' 56.1 ¶¶ 17–18.

**2.    Procedural History**

This action was filed by JMG against Be & Yo, Arch, and Armour on March 5, 2020, and removed to federal court on April 7, 2020. *See* Dkt. 1. Be & Yo was subsequently realigned as a Plaintiff. *See* Dkt. 37. Following discovery, Defendants moved for summary judgment. Dkt. 82. JMG and Be & Yo filed cross motions for summary judgment. Dkts. 96, 109. The Court requested supplemental briefing clarifying the parties' positions on the independent duties to defend and indemnify, *see* Dkt. 125, and heard oral argument on the cross motions for summary judgment on August 2, 2022.

## LEGAL STANDARDS

**1.    Summary Judgment**

To prevail on a motion for summary judgment, a movant must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

5

Fed. R. Civ. P. 56(a). A fact is material "if it might affect the outcome of the suit under the governing law," and it is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (cleaned up). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant" in deciding a motion for summary judgment. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). On cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017).

**2.     New York Insurance Law**

To state a claim for breach of contract under New York law, a plaintiff must show: "(1) the existence of a contract between itself and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by the defendant's breach." *Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).³ The only contested issue is whether Arch's denial of coverage constituted a breach of the agreement.

Under the terms of the policy, Arch owed JMG both a duty to defend against lawsuits stemming from a covered event and a duty to indemnify if JMG was found liable. It is well established that these duties are distinct, and that the duty to defend is broader than the duty to indemnify. *See Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014). Both duties, however, are contractual, and their scope is determined by the parties' agreement.

---

³       The parties agree that New York law controls, and that is sufficient to establish choice of law. *See Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011); *see also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 41 (2d Cir. 2019).

Arch contends that it had no duty to defend or indemnify JMG under the terms of the policy.

"In determining a dispute over insurance coverage," the Court looks first "to the language of the policy." *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002). Such language is construed "in light of common speech and the reasonable expectations of a businessperson," *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (cleaned up), and "in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect," *Matter of Viking Pump, Inc.*, 27 N.Y.3d 244, 257 (2016). Any ambiguities "are to be construed against the insurer." *Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (2012).

To deny coverage, exclusions must be stated "in clear and unmistakable language." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984) (cleaned up). Exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307 (2009). "Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." *Seaboard*, 64 N.Y.2d at 311 (cleaned up). Generally, the initial burden rests on the "insured to establish coverage" and on "the insurer to prove that an exclusion in the policy applies to defeat coverage." *ConEd.*, 98 N.Y.2d at 218.

## DISCUSSION

JMG, Be & Yo, and Defendants have all moved for summary judgment regarding Arch's denial of coverage for the Salazar action. Defendants argue they are entitled to summary judgment based on both the EIFS exclusion and the New York Limitation, and Plaintiffs argue that the EIFS

exclusion is not applicable and that Defendants cannot disclaim coverage on the basis of the New York Limitation because their disclaimer was untimely. For the reasons that follow, the EIFS exclusion precludes coverage as to JMG and Be & Yo, and thus Plaintiffs' motions for summary judgment are denied and Defendants' motion granted.

**I.      The EIFS Exclusion**

The EIFS exclusion states that the Policy "does not apply to any claim, 'suit,' demand or loss that alleges 'bodily injury', 'property damage', or 'personal and advertising injury' that in any way, in whole or in part, arises out of, relates to or results from [EIFS work]." Policy at 14. Plaintiffs contend that this exclusion does not bar coverage of the Salazar suit because his complaint did not "allege exposure to EIFS, nor include actual EIFS-related injury of any kind." JMG Opp. at 5. The content of the complaint, they argue, is determinative because the phrase "that alleges" restricts the exclusion to only those "suits that allege injury related to the installation of EIFS," regardless of whether the injury is actually related to EIFS. JMG Opp. at 6. The Court disagrees.

**A.      The Scope of the Exclusion**

Although a court must construe exclusions narrowly, it must not "disregard the provisions of an insurance contract which are clear and unequivocal or accord a policy a strained construction merely because that interpretation is possible." *Broad St., LLC v. Gulf Ins. Co.*, 37 A.D.3d 126, 131 (2006). "An insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms." *Id.* Plaintiffs' proposed interpretation requires a reading of "that alleges" unsupported by a natural reading of the Policy.

The words of a contract must "be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Currier,*

8

*McCabe & Assocs., Inc. v. Maher*, 75 A.D.3d 889, 891 (2010). In this Policy, the phrase "that alleges" modifies the list of nouns preceding it—"any claim, 'suit,' demand, or loss, that alleges bodily injury." Policy at 14. Plaintiffs' reading of "that alleges," as requiring the injured party to include assertions in a legal complaint, however, accords only with the verb's modification of "suits," or, arguably, "claims," but not with "demand" or "loss," neither of which would necessarily require the filing of a formal action at all. While the Court must accord "a strict and narrow construction" to the exclusion and resolve any ambiguity in favor of the insured, *Pioneer Tower*, 12 N.Y.3d at 307, it is not required to create, through an unreasonable interpretation, broader coverage than what is stated in the Policy, *see Broad St.*, 37 A.D.3d at 131.

Accordingly, this Policy does not require that the EIFS-related injury be alleged in the complaint of an underlying lawsuit for Arch to deny coverage.

**B.     Application to the Salazar Action**

The Court next turns to the question of whether Salazar's injury "in any way, in whole or in part, arises out of, relates to or results from the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair . . . of an [EIFS], or any part thereof." Policy at 14. "In the context of a policy exclusion, the phrase 'arising out of' is unambiguous, and is interpreted broadly to mean 'originating from, incident to, or having connection with.'" *Scottsdale Indemn. Co. v. Beckerman*, 120 A.D.3d 1215, 1219 (2014) (quoting *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005)). The term "relates to or results from" appears to convey a similarly broad scope. In their supplemental briefing, Plaintiffs take the position that "arising out of" requires "some sort of causal connection," between EIFS and the resulting injury. *See* Pls.' Supp. 8-11 (quoting Ex. 2). In the main, they assert that "Salazar in fact was not working with EIFS when he fell off the scaffold at issue in the Schwartz Action," and that "all of Mr.

9

Salazar's claimed bodily injuries are actually caused by a fall from a scaffold, and not from contact with, exposure to, or proximity to EIFS." JMG 56.1 ¶¶ 103, 105.

But even accepting those assertions, whether Salazar was injured from "contact with" EIFS or was actively working with EIFS at the time of the injury is not dispositive, as the Policy only requires that the injury "in any way, in whole or in part, arises out of, relates to or results from" EIFS installation for the exclusion to apply. Policy at 14. The undisputed evidence demonstrates that the sole purpose of the scaffolding was to install EIFS, and what precise task Salazar was performing when he was injured does not change the fact that his injury was "related to" the EIFS installation.

The record is replete with evidence to that effect. There is no question, for instance, that the purchase order between JMG and NY Stucco described the work to be performed at the property as "furnish[ing] and install[ing] EIFS." Defs.' 56.1 ¶ 49. And, employees of Be & Yo, JMG and NY Stucco all testified at their depositions that the work performed at the site was installation of stucco—which is EIFS. *See* Defs.' 56.1 ¶¶ 65–71. Finally, Salazar himself testified that his co-workers used the scaffolding to install EIFS. Dkt. 85-11 (Salazar Dep.) at 88:11–16, 131:19–132:14. Indeed, JMG even admits that "the contractual work that JMG was hired to perform included installation of EIFS." JMG 56.1 ¶ 104. Finally. in its supplemental briefing, JMG contends that because the EIFS installation was complete and the scaffolding was being deconstructed, Salazar's injury could not be related to the installation of EIFS.[4] The Court disagrees. Applying the undisputed facts to the plain language of the contract, which excludes coverage where the injury "in any way, in whole or in part, arises out of, relates to or results from"

---

[4] This fact is not clearly established in the record. There is conflicting testimony regarding whether the scaffolding was being moved to continue EIFS installation in a different area or whether it was being taken down. Because the Court finds that, in either case, the injury is related to the installation of EIFS, this fact is not material.

10

the installation of EIFS, demonstrate that the injury was in fact related. To read the policy as narrowly as Plaintiff seeks would distort it well beyond any reasonable interpretation.

In short: Plaintiffs' contention that these facts do not demonstrate a sufficient nexus between Salazar's injury and the EIFS installation is unavailing. The only work Salazar—or any NY Stucco employee, for that matter—performed on the property was the installation of EIFS. Even accepting that Salazar was not injured while literally installing EIFS, the exclusion still applies, as it merely requires that the injury relate to or arise from EIFS work. Accordingly, Arch properly determined that Salazar's injury was not covered.[5]

### C. Arch's Disclaimer to JMG

#### 1. The Disclaimer was Proper

For the reasons stated above, this Court finds that Arch owes no duty to indemnify the claim in connection with Salazar's injury. That does not resolve the separate question, however, of whether Arch had a duty to defend JMG in the underlying action at the outset, or whether its disclaimer of any such duty was proper. While an insurer is not required to indemnify claims outside the scope of the policy, it may still be required to defend those claims "if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991). While the duty to indemnify protects an insured against a covered loss, an insurer's duty to defend even "groundless" claims is "in a sense 'litigation insurance' expressly provided by the insurance contract." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (2007). Though broad, the duty does not extend indefinitely, and "will end if and when it is shown

---

[5] Because this determination is dispositive, the Court need not analyze whether the Policy's New York Limitation serves as a separate basis for disclaiming coverage, or whether Arch's disclaimer in connection with that exclusion was timely as a matter of law.

unequivocally that the damages alleged would not be covered by the policy." *Stein v. N. Assur. Co. of Am.*, 617 F. App'x 28, 30 (2d Cir. 2015).

As such, the duty to defend inquiry typically begins with an examination of the complaint and the policy's language. *See Cincinnati Ins. Co. v. Roy's Plumbing, Inc.*, 692 F. App'x. 37, 38 (2d Cir. 2017). Nevertheless, a "narrow, but widely recognized exception to the rule allows an insurer to refuse or withdraw a defense if evidence extrinsic to those sources and unrelated to the merits of plaintiff's action, plainly take the case outside the policy coverage." *Int'l Bus. Machines*, 363 F.3d at 148 (cleaned up). Here, when Arch disclaimed coverage in the Schwartz action, it was apparent that Salazar was injured in a construction accident involving the installation of EIFS, which is excluded under the Policy for the reasons outlined above.

### 2. Arch's Disclaimer was Timely

Even if a disclaimer is proper, it must also be timely. New York Insurance Law § 3420(d)(2) requires an insurer "to give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." Whether a notice of disclaimer or denial of coverage was made "'as soon as is reasonably possible' is a question of fact," one that depends especially on "the length of and the reason for the delay." *Hartford Ins. Co. v. Cnty. of Nassau*, 46 N.Y.2d 1028, 1030 (1979). The time to disclaim begins to run "once the insurer has sufficient knowledge of facts entitling it to disclaim." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 66 (2003). The insurer bears the burden of demonstrating that delay in disclaiming coverage was reasonable. *Id.* at 69.

Even assuming that JMG has preserved the argument that the disclaimer based on the EIFS exclusion was untimely, that argument is unavailing. Arch only became aware of facts entitling it to deny coverage based on the EIFS exclusion on November 2, 2017, when it received the purchase

order between NY Stucco and JMG stating the work to be performed was "furnish and install EIFS." Defs.' 56.1 ¶ 50; Dkt. 83-12. This contract was received during a protracted investigation into the claim, which was repeatedly delayed by JMG's refusal to produce the requested documents. *See* Defs.' 56.1 at ¶¶ 30–43. And, Arch's disclaimer made just 26 days after receiving the purchase order from JMG fits into a window repeatedly found reasonable by New York courts. *See Mayo v. Metro. Opera Ass'n, Inc.*, 108 A.D.3d 422, 425, (2013) ("[Insurer's] disclaimer of coverage within 30 days of receiving notice of the claim was timely as a matter of law."); *Castro v. Prana Assocs. Twenty One, LP*, 95 A.D.3d 693 (2012) (finding 20 day delay was reasonable as a matter of law); *Nabutovsky v. Burlington Ins. Co.*, 81 A.D.3d 615, 617 (2011) (finding disclaimer made 30 days after receiving the notice of claim was reasonable).[6] Accordingly, under these circumstances, Arch's disclaimer was timely.

### D. Arch's Disclaimer to Be & Yo

Be & Yo also disputes the timeliness of Arch's disclaimer based on the EIFS exclusion. Arch disclaimed coverage to Be & Yo on September 19, 2018. Defs.' 56.1 ¶ 36; Kawas Aff. ¶ 36. Plaintiffs contend that Be & Yo gave notice of its claim to Arch on August 15, 2018. JMG 56.1 ¶ 139; Dkt. 83-17. Arch, relying on the same email exchange, argues it did not learn of the claim until August 20, 2018. Defs.' Opp at 11-12. Having reviewed the underlying emails, it is apparent that the initial notice was sent to GNP (JMG's broker), and Arch did not receive any notice until the email was forwarded by GNP on August 20, 2018.[7] Moreover, Arch did not receive a copy of

---

[6] This case is distinguishable from *ADD Plumbing, Inc. v. Burlington Ins. Co.*, 192 A.D.3d 496, 497 (2021), on which Plaintiffs rely. There, a delay of eight days after an insurer received a claim was found unreasonable because the insurer had known of the claim for "almost two months" and "was sufficiently aware of the facts." *Id.* Here, while Arch had previous notice that JMG hired subcontractors, it was not previously aware that the EIFS exception may also have excluded coverage, and did not become aware until it received the purchase order on November 2, 2017.

[7] Be & Yo's argument that an earlier notice date should apply because Arch's had knowledge of the underlying accident is misplaced. Each insured has an independent duty to file a notice of claim. *See Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 215 (2d Cir. 2004).

13

the pleadings until August 28, 2018. Because an insurer's time to disclaim only begins to run once it has knowledge of the facts necessary to disclaim, *see First Fin. Ins. Co.*, 1 N.Y.3d 64, August 20, 2018 is the earliest possible date on which Arch can be said to have notice of a basis to disclaim coverage with respect to Be & Yo's claim. Its disclaimer made less than 30 days later, and less than 20 days after receiving in the underlying pleading, was thus reasonable. *See supra* p. 13 (collecting cases). Because the EIFS exclusion applies to the underlying claims, and Arch properly disclaimed, it owes no duty to defend or indemnify Be & Yo.

## II.     Summary Judgment as to Armour

Finally, to the extent Plaintiffs contend that Armour owes them any duty based on the Policy, summary judgment in Armour's favor is warranted based on the EIFS exclusion as well. Because Armour, however, is not a party to the Policy, it is entitled to summary judgment on the independent grounds that Plaintiffs have stated no claims against it.

The undisputed facts demonstrate Armour was a claims administrator for a limited portion of the dispute between the parties from January to December of 2020. Defs.' 56.1 ¶¶ 17–18. Armour was not a party to the Policy. *Id.* ¶¶ 15–16. Plaintiffs have not presented any facts to demonstrate Armour owed them any duties, breached any agreement, or was involved in this dispute in any way. Their only argument is that

> neither Defendant has provided any affidavit certifying that there are no other responsive documents, nor has provided other proof in admissible form establishing as a matter of law that Armour does not have other or further relationships with Arch that would result in a finding of its status of successor, assignee, etc.

JMG Mem. at 26. The Second Circuit has held that "a plaintiff cannot defeat a motion for summary judgment . . . with speculation about what discovery might uncover." *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). The "mere hope that further evidence may develop prior to trial" is insufficient to defeat a summary judgment motion where the party fails

14

to explain what documents are missing or their relevance. *See Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991); *see also Strausser v. Heil Co.*, 166 F.3d 1201, 1201 (2d Cir. 1998) ("[A party] cannot hide behind an unfounded theory that it is [the other party's] obligation to produce the evidence in its possession.").

The record demonstrates Armour had no substantive role in this dispute, and Plaintiffs have advanced no reason they should not be dismissed from this action. Accordingly, Plaintiffs' summary judgment motions as to Armour are denied and Armour's motion is granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions for summary judgment are denied, and Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully directed to terminate the pending motions at Dkts. 82, 96, 109, and close this action.

SO ORDERED.

Dated:   November 3, 2022
         New York, New York

Hon. Ronnie Abrams
United States District Judge